# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAMONA MARCEL LONG, : | |
|     Petitioner : | |
| : | No. 1:16-cr-75-4 |
| v. : | |
| : | (Judge Kane) |
| UNITED STATES OF AMERICA, : | |
|     Respondent : | |

## **MEMORANDUM**

Presently before the Court is pro se Petitioner Ramona Marcel Long ("Petitioner")'s motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 256) and her response to the Court's October 9, 2019 Order directing her to show cause why her § 2255 motion should not be dismissed as untimely (Doc. No. 268). For the following reasons, the Court will dismiss Petitioner's § 2255 motion as untimely.

## I. BACKGROUND

On March 23, 2016, a grand jury returned an indictment charging Petitioner with: one count of conspiracy to manufacture, distribute, and possess with the intent to distribute 100 kilograms and more of marijuana; one count of conspiracy to commit money laundering; and nine (9) counts of manufacturing, distributing, and possessing with the intent to distribute marijuana. (Doc. No. 1.) After Petitioner was arrested (Doc. No. 41), she was released on a $150,000.00 unsecured bond cosigned by her parents and her husband, Randy Irby (Doc No. 169 ¶ 5). On June 21, 2016, a report alleging that Petitioner had violated her pretrial release was submitted to the Court. (Doc. No. 169 ¶ 6.) The report alleged that Petitioner had violated her conditions of release by possessing a firearm, destructive device, or dangerous weapon, and by failing to comply with mental health treatment requirements. (Id.) The report advised further that Randy Irby "may no longer be a suitable surety." (Id.) The report was based on information

gathered following a search of Petitioner's home after Randy Irby "had sent several emails to Butte County[,] [California] Supervisors that were of a threatening nature." (Id.) Officers recovered bomb-making materials during the search, and Irby admitted to making smoke bombs and grenades. (Id.) Following a bond violation hearing on November 8, 2016, Petitioner's conditions of release were modified to limit Randy Irby to "staying at her home to Friday and Saturday nights only." (Id. ¶ 9.)

Petitioner subsequently entered into a plea agreement with the Government. (Doc. No. 104.) The plea agreement called for Petitioner to plead guilty to conspiracy to manufacture, distribute, and possess with the intent to distribute 100 kilograms and more of marijuana and conspiracy to commit money laundering. (Id. ¶ 1.) On May 3, 2017, Petitioner appeared before Magistrate Judge Martin C. Carlson for a change of plea hearing. (Doc. No. 127.) Magistrate Judge Carlson concluded that Petitioner was fully competent to enter an informed plea and understood the consequences of her plea, that she was pleading guilty knowingly and voluntarily, and that the plea was supported by an independent basis in fact. (Id.) On that date, Magistrate Judge Carlson recommended that this Court accept Petitioner's guilty plea. (Id.) On May 23, 2017, the Court adopted Magistrate Judge Carlson's Report and Recommendation and accepted Petitioner's guilty plea. (Doc. No. 145.) On August 15, 2017, the Court granted Petitioner's motion to modify her conditions of release to allow Randy Irby to reside with her full-time. (Doc. Nos. 160, 163.)

The United States Probation Office subsequently prepared a Presentence Investigation Report ("PSR"), which concluded that Petitioner's total offense level was 32. (Doc. No. 170 ¶ 48.) Petitioner fell within criminal history category one (1). (Id. ¶ 51.) The Probation Office noted that Petitioner had pending charges for cultivating marijuana and possessing marijuana for

sale in the Superior Court of California. (Id. ¶ 52.) The Probation Office indicated that Petitioner was subject to a mandatory minimum term of five (5) years' incarceration for the conspiracy charge and that Petitioner's total offense level of 29 and criminal history category of one (1) resulted in a Sentencing Guidelines range of 87 to 108 months of incarceration. (Id. ¶¶ 81-82.)

Petitioner filed objections to PSR, asserting, inter alia, that she was entitled to the "safety valve" reduction set forth in § 5C1.2[1] of the Sentencing Guidelines. (Doc. No. 170 at 4.) The

---

[1] Section 5C1.2 provides that:

(a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-18 U.S.C. § 3553(f)(5) set forth below:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a

Probation Office determined that Petitioner was not eligible for the "safety valve" reduction because a dangerous weapon was possessed in connection with the offense. (Id.) On September 28, 2017, the Court sentenced Petitioner to seventy-two (72) months' imprisonment to be served concurrently "with any sentence which may be imposed in [the] Superior Court of California, case number CM044017." (Doc. No. 202 at 2.) Petitioner did not appeal.

On January 2, 2019, Petitioner, proceeding pro se, filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 256.) In that motion, Petitioner raises the following claims for relief:

Ground One: The Court erred by not granting relief at sentencing under the "safety valve" provisions of § 5C1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(f); and

Ground Two: The Court improperly imposed restricted access to her spouse, Randy Irby, as a condition of her pretrial release.

(Id. at 4-5.) In response, the Government asserts that Petitioner's § 2255 motion is untimely and that her claims are not cognizable under § 2255 (Doc. No. 263). In an Order dated October 9, 2019, the Court agreed with the Government that Petitioner's § 2255 motion appeared to be untimely pursuant to 28 U.S.C. § 2255(f) and, therefore, directed Petitioner to show cause within thirty (30) days why her § 2255 motion should not be dismissed as untimely. (Doc. No. 267.) Petitioner filed her response to the Court's show cause Order on October 22, 2019. (Doc. No.

---

determination by the court that the defendant has complied with this requirement.

(b) In the case of a defendant (1) who meets the criteria set forth in subsection (a); and (2) for whom the statutorily required minimum sentence is at least five years, the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall be not less than level 17.

U.S.S.G. § 5C.1.2.

268.) The Government filed a brief opposing Petitioner's response on November 4, 2019. (Doc. No. 269.) On November 19, 2019, the Court received a letter from Petitioner that the Court construes to be Petitioner's reply brief. (Doc. No. 270.) Accordingly, Petitioner's § 2255 motion is ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, § 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185.

## III. DISCUSSION

### A. Timeliness of Petitioner's Claims

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time her conviction becomes final to file a Section 2255 motion. See 28 U.S.C. § 2244. Specifically, the one-year statute of limitations begins to run on any one of the following dates:

(1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented by making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2255(f).

As noted above, the one-year limitations period generally begins to run on "the date on which the judgment of conviction becomes final." See id. § 2255(f)(1). In this context, a judgment of conviction becomes final on the date on which the time for filing a timely direct appeal expires. See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). Here, Petitioner's judgment of conviction was entered on September 29, 2017. (Doc. No. 202.) She, therefore, had fourteen (14) days to file a notice of appeal. See Fed. R. App. P. 4(b)(1)(A)(i). Petitioner did not appeal, so her judgment of conviction became final on October 13, 2017. Therefore, Petitioner had one year from October 13, 2017, or until October 15, 2018, to file a timely § 2255 motion. A review of the record in this case reveals that Petitioner did not file her § 2255 motion until January 2, 2019. (Doc. No. 256.) Thus, Petitioner's § 2255 motion is facially untimely unless Petitioner is entitled either to belated commencement of the limitations period under § 2255(f)(2)-(4) or equitable tolling.

### 1.     Belated Commencement Under 28 U.S.C. § 2255(f)(2)

Petitioner argues that she was "prevented from making a motion by . . . [G]overnment action." (Doc. No. 268 at 1.) In support of her argument, Petitioner maintains that she self-surrendered at the Federal Correctional Institution in Dublin, California ("FCI Dublin") on October 23, 2017. (Id. at 4, Doc. No. 202 at 2.) She "immediately request[ed] to see medical to

6

get [her] prescriptions settled with them." (Doc. No. 268 at 4.) Petitioner alleges that she did not get her prescriptions, including her anti-anxiety medication, during her first week of incarceration. (Id.) On October 30, 2017, Petitioner was taken to FCI Dublin's Special Housing Unit ("SHU"), where she was housed until February 15, 2018. (Id. at 1.) She maintains that she was "incapacitated at this time" and that it "took some months to get [her] medication to a point where the anxiety was reduced enough to go back to general population." (Id. at 1, 5.) Petitioner asserts that she did not learn about § 2255 motions until she returned to general population. (Id. at 5.)

"While the [United States Court of Appeals for the] Third Circuit has not addressed the issue, the text of § 2255(f)(2) suggests that the impediment must be [G]overnment-created, violative of the Constitution, and actually prevent the filing of a motion to vacate." Gantt v. United States, No. 11-6191 (RBK), 2014 WL 6471478, at *3 (D.N.J. Nov. 18, 2014); cf. Johnson v. Fla. Dep't of Corr., 513 F.3d 1328, 1331-32 (11th Cir. 2008) (noting, with respect to § 2244(d)(1)(B), which permits belated commencement of the limitations period applicable to habeas petitions brought pursuant to 28 U.S.C. § 2254, that it "requires (1) state action that both (2) 'violat[ed] . . . the Constitution or laws of the United States' and (3) 'prevented [the prisoner] from filing'" a habeas petition). In the instant case, Petitioner has not demonstrated that unconstitutional Government action prevented her from filing her § 2255 motion in a timely manner. Petitioner's placement in the SHU fails to raise to the level of a constitutional violation. See Leamer v. Fauver, 288 F.3d 532, 546 (3d Cir. 2002) (noting that the "mere fact of placement in administrative segregation is not in itself enough to implicate a liberty interest; the liberty interest only exists if that placement is an 'atypical and significant hardship' relative to others similarly situated"). Likewise, Petitioner has not demonstrated that the Government

demonstrated deliberate indifference to her medical needs such that her Eighth Amendment rights were violated. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). Moreover, Petitioner has not explained how the Government prevented her from filing her § 2255 motion on time, by October 15, 2018, when she had been released from the SHU eight (8) months prior to the expiration of the limitations period under § 2255(f)(1). Accordingly, the Court declines to find that Petitioner is entitled to belated commencement of the limitations period pursuant to § 2255(f)(2).

### 2. Belated Commencement Under 28 U.S.C. § 2255(f)(3)

To be entitled to belated commencement under § 2255(f)(3), a petitioner must file a § 2255 motion within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." See 28 U.S.C. § 2255(f)(3); see also Dodd v. United States, 545 U.S. 353, 357-58 (2005) (noting that the limitations period under § 2255(f)(3) runs from the date the Supreme Court recognizes the new right, not the date the new right is made retroactive). Petitioner, however, does not assert any claims relying on such a right. Accordingly, she is not entitled to belated commencement of the limitations period pursuant to § 2255(f)(3).

### 3. Belated Commencement Under 28 U.S.C. § 2255(f)(4)

As noted above, Petitioner suggests that she did not learn about the possibility of filing a § 2255 motion until she returned to general population. (Doc. No. 268 at 5.) A liberal reading of her response to the Court's show cause Order suggests that she may be arguing for belated commencement of the limitations period pursuant to § 2255(f)(4). For belated commencement under that provision, a petitioner must demonstrate that "the facts underlying the claim were not

discoverable earlier through the exercise of reasonable diligence." See United States v. Johnson, 734 F. App'x 153, 157 (3d Cir. 2018). Moreover,

> discovery through the exercise of due diligence is not the same as actual understanding. Section 2255(f)(4) gives a petitioner the benefit of a later starting date of the limitations period only if vital facts could not have been known by the date that his conviction became final. In other words, the limitations period begins when the petitioner knows—or, through diligence, could discover—the important facts, not when the petitioner recognizes their legal significance.

Harper v. United States, No. 4:07-CR-339, 2012 WL 32920, at *3 (M.D. Pa. Jan. 6, 2012). In the instant case, nothing in the record suggests that Petitioner was not aware of the facts underlying her claims for relief at the time of sentencing because, at that time, she learned that the Court did not apply the "safety valve" provision. Moreover, Petitioner knew well before sentencing that restricted access to her spouse, Randy Irby, had been made a condition of her pretrial release. While Petitioner may not have recognized the legal significance, if any, of these facts, her subsequent discovery of the availability of a § 2255 motion does not entitle her to belated commencement of the limitations period under § 2255(f)(4).

### 4. Equitable Tolling

In her reply brief, Petitioner suggests that she is entitled to equitable tolling because she "had a nervous breakdown which rendered her so incapacitated that she was incapable of managing her own affairs and understanding her legal rights and acting upon them or because an individual is not always able to communicate with other prisoners who possess legal knowledge." (Doc. No. 270 at 1.) "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks omitted) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Accordingly, equitable tolling is to be applied sparingly and only in "extraordinary" and "rare"

9

circumstances. See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006). The Third Circuit has found that equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." See Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (quoting United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)). The petitioner bears the burden of establishing that she is entitled to benefit from equitable tolling. See Pace, 544 U.S. at 418.

In the instant case, Petitioner has failed to demonstrate that her placement in the SHU from October of 2017 until February of 2018 warrants equitable tolling of the limitations period. "Routine aspects of prison life such as lockdowns, lack of access to legal resources, and disturbances must be taken into consideration by a prisoner in deciding when to file a federal petition, because these 'do not constitute extraordinary circumstances sufficient to equitably toll the statute of limitations.'" Garrick v. Vaughn, No. 00-4845, 2003 WL 22331774, at *4 (E.D. Pa. Sept. 5, 2003) (quoting Atkins v. Harris, No. 98-3188, 1999 WL 13719, at *2 (N.D. Cal. Jan. 7, 1999)), aff'd sub nom. Garrick v. Diguglielmo, 162 F. App'x 122 (3d Cir. 2005); see also Gonzalez v. United States, 918 F. Supp. 2d 287, 289-90 (D. Del. 2013) (declining to find that equitable tolling rendered the inmate-petitioner's § 2255 motion timely filed because the petitioner's placement in a special housing unit without adequate access to legal materials was "a routine aspect of prison life"); Harper, 2012 WL 32920, at *5 (declining to conclude that inmate-petitioner was entitled to equitable tolling "because he was transferred from one penitentiary to another, placed in solitary confinement at various times, and not always able to communicate with other prisoners who possessed legal knowledge"). Significantly, Petitioner presents no evidence to suggest that her stay in the SHU, which occurred at the beginning of the limitations

10

period, affected her ability to timely file her § 2255 motion. See Robinson v. Johnson, 313 F.3d 128, 143 (3d Cir. 2002) (observing that a lack of access to legal materials is more serious when it occurs at the end of the limitations period rather than at the beginning of the period).

Moreover, with respect to Petitioner's allegations that she suffered a "nervous breakdown," the Third Circuit has indicated that mental incompetence is not a per se cause for equitable tolling. See Champney v. Sec'y Pa. Dep't of Corr., 469 F. App'x 113, 117 (3d Cir. 2012) (citing Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001)). To receive the benefit of equitable tolling, a petitioner must demonstrate that the alleged mental impairment affected her ability to file a timely action. See id. Factors to consider include:

> (1) [whether] the petitioner [was] adjudicated incompetent and, if so, when did the adjudication occur in relation to the habeas statutory period; (2) [whether] the petitioner [was] institutionalized for his mental impairment; (3) [whether] the petitioner handled or assisted in other legal matters which required action during the federal limitations period; and (4) [whether] the petitioner supported his allegations of impairment with extrinsic evidence such as evaluations and/or medications.

Passmore v. Pennsylvania, No. 08-705, 2008 WL 2518108, at *3 (M.D. Pa. June 19, 2008). In the instant case, Petitioner has failed to substantiate her claims with any extrinsic evidence such as evaluations or prescribed medications. Significantly, Petitioner presents no evidence to suggest that her mental impairments affected her ability to timely file her § 2255 motion. The Court, therefore, declines to apply equitable tolling to render her motion timely filed. See Showers v. Kerestes, No. 11-950, 2012 WL 4478362, at *4 (W.D. Pa. Aug. 27, 2012) (concluding that habeas petitioner could not benefit from equitable tolling where he had failed to present evidence that his attention deficit disorder, bipolar disorder, and depression affected his ability to file a timely habeas petition), report and recommendation adopted, 2012 WL 4478315 (W.D. Pa. Sept. 27, 2012).

### B. Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion. The decision to hold a hearing is wholly within the discretion of the district court. See Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). Where the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing. See Gov't of V.I. v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). Here, as discussed above, the Court finds that "the motion and files and records of this case show conclusively that the movant is not entitled to relief." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62). Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

### C. Certificate of Appealability

In proceedings brought under Section 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, the Court concludes that jurists of reason

would not find the procedural disposition of this case debatable.  Accordingly, the Court will not issue a COA.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will dismiss Petitioner's § 2255 motion (Doc. No. 256) as untimely.  The Court will not conduct an evidentiary hearing and will not issue a COA.  An appropriate Order follows.